# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### May 6, 2003 Session

## STATE OF TENNESSEE v. CHARLES RUFUS FOSTER, SR.

**Direct Appeal from the Circuit Court for Carroll County**
**No. 01CR1677     C. Creed McGinley, Judge**

---

### No. W2002-00350-CCA-R3-CD  - Filed August 29, 2003

---

The defendant appeals his conviction of rape and his ten-year sentence.  The defendant contends that the evidence is insufficient to support the conviction, that the trial court erroneously allowed the victim to testify, and that expert testimony should not have been admitted into evidence.  The defendant also contends that the trial court erred in sentencing.  After careful review, we conclude the evidence is sufficient to support the conviction and the trial court did not err.  We affirm the conviction and the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID G. HAYES and JOE G. RILEY, JJ., joined.

Victoria L. DiBonaventura, Paris, Tennessee, for the appellant, Charles Rufus Foster, Sr.

Paul G. Summers, Attorney General and Reporter; P. Robin Dixon, Jr., Assistant Attorney General; G. Robert Radford, District Attorney General; and Eleanor Cahill, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

A Carroll County Grand Jury indicted the defendant, Charles Rufus Foster, Sr., for aggravated rape on May 7, 2001.  The defendant was convicted of rape, a Class B felony, and sentenced to ten years in the Tennessee Department of Correction.  The defendant filed a Motion for New Trial, which was overruled on February 8, 2002.  The defendant brings this timely appeal and contends the following:
> (1) The evidence is not sufficient to sustain the conviction;
> (2) The trial court erroneously allowed the victim to testify;
> (3) The trial court erred by not allowing a jury-out hearing prior to the testimony of the forensic scientist, Lawrence James;
> (4) The trial court erred in sentencing the defendant; and

(5) The defendant received ineffective assistance of counsel.[1]

The case arises from an incident occurring at the Hope Center, a workplace for people with developmental disabilities, in Huntingdon, Tennessee. The victim, a twenty-six-year-old mentally challenged woman, accused the defendant, a staff member of the Hope Center, of raping her. The victim had an I.Q. of 56 and suffers from bipolar disorder. The state's proof revealed the following.

On March 27, 2001, at approximately 11:30 a.m., the defendant and the victim were seen entering the center's warehouse together. The defendant told the victim to pull her pants down, and he inserted his penis inside her as she grabbed onto a handrail in the warehouse to steady herself. The defendant told the victim that he would perform this same act every Tuesday and ordered her not to tell anyone about the incident. On the night of the incident, the victim told a staff member that the defendant raped her. The victim was taken to the hospital by a Hope Center staff member, and a rape kit procedure was performed.

In his first statement to police, the defendant claimed that he, the victim, and another resident left the workshop together. In his second statement, the defendant told the police that the victim asked him to have sex with her, but he refused and ejaculated into a towel and offered it to the victim so she could see his ejaculate. The defendant claimed the victim went to the bathroom with the towel before returning to work. Forensic evidence revealed that the defendant could have been the source of the semen stain found in the victim's underwear. The defendant was suspended from his job as a Hope Center van driver and warehouse supervisor before being arrested by police.

## Analysis

### I. Sufficiency of the Evidence

The defendant contends the evidence is insufficient to sustain his conviction. Specifically, the defendant argues that the trial court erroneously allowed the state to present DNA evidence and that the state failed to establish the elements of the crime beyond a reasonable doubt.

When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt. T.R.A.P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Brewer, 932 S.W.2d 1, 18 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199

---

[1] During oral argument, the defense counsel chose to withdraw this issue for our consideration. Therefore, we will not address this issue.

Tenn. 298, 305, 286 S.W.2d 856, 859 (1956).  To the contrary, this court is required to afford the state the strongest legitimate view of the evidence contained in the record, as well as all reasonable and legitimate inferences which may be drawn from the evidence.  State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995).

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact.  State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

> Tennessee Code Annotation section 39-13-503 defines rape as:
> unlawful sexual penetration of a victim by the defendant or of the defendant by a victim accompanied by any of the following circumstances:
>     (1) Force or coercion is used to accomplish the act;
>     (2) The sexual penetration is accomplished without the consent of the victim and the defendant knows or has reason to know at the time of the penetration that the victim did not consent;
>     (3) The defendant knows or has reason to know that the victim is mentally defective, mentally incapacitated or physically helpless; or
>     (4) The sexual penetration is accomplished by fraud.
>         (b) Rape is a Class B felony.

The victim is considered to be mentally defective.  She is a twenty-six-year-old woman with an I.Q. of 56 and the cognitive abilities of a ten-year-old.  The record indicates the defendant worked at the Hope Center for approximately six months prior to his suspension and knew of the victim's mental disability.  The victim testified that the defendant ordered her to pull down her pants, and he penetrated her.  Testimony was introduced that the mentally retarded clients of the Hope Center are told to obey staff members and encouraged not to wander about the grounds without supervision. Here, the evidence established that the defendant took advantage of the victim's mental limitations and ordered her to allow him to violate her.  Evidence was presented to the jury that the semen found in the victim's underwear could have been from the defendant.  However, the defendant argues that this evidence does not conclusively establish that the defendant raped the victim.  The defendant offered an explanation for the presence of the semen.  The jury is free to reject the defendant's explanation. We conclude that when viewed in the light most favorable to the prosecution, the evidence substantiates the jury's verdict of guilt.  After careful review, we conclude that the jury had sufficient evidence to convict the defendant of rape, regardless of the inconclusive DNA evidence.

## II. Victim's Testimony

The defendant contends that the trial court erred in allowing the victim to testify.  The defendant argues that the victim was not a competent witness in that she did not understand the oath. He further argues that the trial court applied an incorrect legal standard and abdicated its authority to decide competency to the jury.

The determination of a witness's competency to testify is within the discretion of the trial court. State v. Evans, 838 S.W.2d 185, 194 (Tenn. 1992). Absent an abuse of discretion, the trial court's decision will not be overturned. See State v. Caughron, 855 S.W.2d 526, 538 (Tenn. 1993). When determining whether a child is competent to testify, the trial court should consider "whether the child understands the nature and meaning of an oath, has the intelligence to understand the subject matter of the testimony, and is capable of relating the facts accurately." State v. Ballard, 855 S.W.2d 557, 560 (Tenn. 1993). "The purpose of determining the competency of the witness in child sexual abuse cases is to allow a victim to testify if it can be determined that the child understands the necessity of telling the truth while on the witness stand." Id.

Here, the victim has the cognitive abilities of a ten-year-old child and was questioned as to her understanding of the oath. After the state asked the victim several questions, the trial court expressed that the state's questions were confusing and allowed the state to rephrase the questions in a simpler manner. The trial court did not determine whether the victim was able to comprehend the obligation of the oath, but did find that the victim understood the difference between the truth and a lie. The trial court instructed the jury that it was their duty to determine whether the victim understood the "nature and significance of the oath that she's taken." The trial court instructed the jury to disregard the victim's testimony if it found that she did not understand the oath. The defendant argues that the trial court erred in abdicating its responsibility to make such a determination to the jury. The defendant also argues that the trial court erred in applying the pre-July 1, 1992, standard of rebuttable presumption which states that a child under the age of fourteen is not competent to testify.

Prior to its repeal in 1991, Tennessee Code Annotated section 24-1-101 provided that "every person of sufficient capacity to understand the obligation of an oath is competent to testify." In the past, evidence had to be presented that a younger child had sufficient mental capabilities to give a reasonable account of the incident that he or she witnessed, understood the difference between right and wrong, and understood the meaning and obligation of an oath. Only witnesses fourteen years of age and older were presumed to be competent to testify, and there was a common law rebuttable presumption of incompetency for witnesses under the age of fourteen. It was within the discretion of the trial court to determine whether the child witness was competent to testify. Bright v. State, 191 Tenn. 249, 232 S.W.2d 53, 56 (1950).

With the enactment of the Tennessee Rules of Evidence, the Tennessee General Assembly repealed Tennessee Code Annotated section 24-1-101, Public Acts of 1991, Chap. 273. At the time of the trial and now, Rule 601 of the Tennessee Rules of Evidence was effective and provides: "Every person is presumed competent to be a witness except as otherwise provided in these rules or by statute."

Rule 602 of the Tennessee Rules of Evidence provides in pertinent part: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."

Rule 603 of the Tennessee Rules of Evidence provides: "Before testifying, every witness shall be required to declare that the witness will testify truthfully by oath or affirmation, administered in a form calculated to awaken the witness's conscience and impress the witness's mind with the duty to do so."

The record is not clear as to whether the trial court employed the language of the repealed Tennessee Code Annotated section 24-1-101. The record is only suggestive of that fact. In short, a child under the age of fourteen is no longer presumed to be incompetent to testify. All that is required for the child witness is personal knowledge of the matter about which the witness testifies and an awareness of the obligation to tell the truth under oath. State v. Jackson, 525 S.W.2d 661, 667 (Tenn. Crim. App. 2001). In this case, the victim, who had a mental age of ten years old at the time of trial, was questioned by the state and the trial court as to the difference between the truth and a lie. The trial court's decision to allow the jury to determine whether the victim was competent to testify as to her understanding of the oath is harmless error, at best.

Under prior law, the trial court's determination of a child's competency was to be reversed only upon a finding of "gross abuse." Ball, 219 S.W.2d at 167. Our supreme court has left the matter of competency of child witnesses to the discretion of the trial court. Caughron, 855 S.W.2d at 538. The defendant has not shown any evidence of "gross abuse" of the judge's discretion since he fails to show that the victim was incompetent to testify under the requirements of Rules 601, 602, and 603 of the Tennessee Rules of Evidence. The victim's testimony is quite clear that she understood the difference between telling the truth and a falsity and understood the nature and significance of the oath. We point to the following colloquy to underscore this fact:

The Court:    You indicated to me – when you raised your right hand, did you
              understand what that was about?
The Witness:  Yes.
The Court:    Do you want to tell me what that was about when I said that to you
              and you said, "I will"?
The Witness:  Well, when you raise your right hand, that means you always have
              to tell the truth and no lie.

"The weight and credibility of witness' testimony are "matters entrusted exclusively to the jury as the triers of fact." Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). In this case, the jury, as the fact finders, were to determine whether the victim's testimony was credible or not. We conclude that the trial court did not err in allowing the victim to testify.

We also note that the defendant, after an extended discussion with the trial court, expressly withdrew any objection to the witness testifying. On appeal, the defendant takes an inconsistent position. An appellant cannot change theories from the trial court to the appellate court. State v. Alder, 71 S.W.3d 299, 303 (Tenn. Crim. App. 2001).

## III.  Jury Out Hearing

The defendant contends that the trial court erred by refusing to grant the defendant a jury out hearing prior to the testimony of the Lawrence James, a forensic scientist for the Tennessee Bureau of Investigations.  Specifically, the defendant argues that despite the defense counsel's objections, inadmissible evidence was allowed to be presented to the jury.

Before the witness testified, the defense counsel stated that she "would object to part of his testimony in part" and would ask the trial court to make an offer of proof that part of the witness' testimony would be deemed inadmissible.  The trial court conducted a bench conference and the defense counsel stated that her objections would concern the following:

> "He's going to testify that there is a specific something in the specimen, in the mixture of DNA that was found in the drawers, panties, that is consistent with the Defendant's blood, and only one percent (1%) of Americans have this thing, but this thing, whatever it is, is not acceptable in the scientific community because it's unreliable."

The trial court stated that before the witness testified to any of this portion of his findings, he wanted the state to lay the proper foundation.  The trial court expressed that if the state did not lay the proper foundation, the evidence would not come in.  The trial court informed defense counsel that her objection was premature at this point in the proceedings.

After the witness testified to his qualifications and the general acceptability of the testing methods employed, the state asked the witness if further testing with probabilities was conducted. At this point, the defense counsel objected and the following colloquy took place between the state and the witness:

> State:    So there's no other expertise required for this further testing?
> Witness:  No ma'am.
> State:    Has this testing been done for some time, for a period of time
>           by other laboratories?
> Witness:  If I'm not mistaken, the testing that you're referring to is actually
>           an issue of interpretation.  It's not a test that I perform.
> State:    It's not an additional test?
> Witness:  Yes, ma'am.  It's -
> State:    But it's your interpretation based on your expertise and your training?
> Witness:  Yes, ma'am.

The trial court sustained the defendant's objection.

The admissibility of evidence is generally within the broad discretion of the trial court. Absent an abuse of discretion, the trial court's decision will not be reversed.  State v. McLeod, 937 S.W.2d 867, 871 (Tenn. 1996).  The trial court found that the testimony of the witness would be inadmissible and did not allow the witness to testify regarding his interpretation of the suggested testing.  The central concern of the defendant was that any testimony concerning the tests given

would not be admitted into evidence. Here, the testimony regarding the DNA evidence was not presented to the jury. Therefore, we conclude that this issue is without merit.

## IV. Sentencing

The defendant contends that the trial court erred in sentencing by its misapplication of enhancement factor (7).

When a criminal defendant challenges the length, range, or manner of service of a sentence, the reviewing court must conduct a *de novo* review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. §40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In the event the record fails to show such consideration, the review of the sentence is purely *de novo*. State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

If our review reflects that the trial court followed the statutory guidelines, that it imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law and that its findings of fact are adequately supported by the record, then we may not modify the sentence "even if we would have preferred a different result." State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). The defendant bears the burden of showing the impropriety of the sentence imposed. Ashby, 823 S.W.2d at 169.

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) the evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statements the defendant wishes to make on his own behalf regarding sentencing, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-210(a), (b), -103(5); State v. Williams, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).

The presumptive sentence to be imposed by the trial court for a Class B, C, D, or E felony is the minimum within the applicable range unless there are enhancement or mitigating factors present. Tenn. Code Ann. § 40-35-210(c). If there are enhancement or mitigating factors, the court must start at the presumptive sentence, enhance the sentence as appropriate for the enhancement factors, and then reduce the sentence in the range as appropriate for the mitigating factors. Id. § 40-35-210(e). The weight to be given each factor is left to the discretion of the trial judge. Shelton, 854 S.W.2d at 123. However, the sentence must be adequately supported by the record and comply with the purposes and principles of the 1989 Sentencing Reform Act. State v. Moss, 727 S.W.2d 229, 237 (Tenn. 1986).

When imposing a sentence, the trial court must make specific findings of fact on the record supporting the sentence. Tenn. Code Ann. § 40-35-209(c). The record should also include any enhancement or mitigating factors applied by the trial court. Id. § 40-35-210(f). Because the trial court adequately considered the enhancement and mitigating factors as well as the underlying facts, our review is *de novo* with a presumption of correctness.

The defendant was sentenced as a Range I offender to ten years in the Tennessee Department of Correction. The trial court set the sentence within the range for a Class B felony, which requires a sentencing range of eight to twelve years for rape. Tenn. Code Ann. § 40-35-112(a)(2).

The trial court applied enhancement factor (1),[2] that the defendant had a history of criminal convictions or criminal behavior, and (7), that the offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement. The defendant only challenges the trial court's application of enhancement factor (7).

Enhancement factor (7) requires an examination of the defendant's motive for committing the offense. State v. Kissinger, 922 S.W.2d 482, 490 (Tenn. 1996). In rape cases, the state may prove the defendant's motivation to seek pleasure or excitement through evidence of "sexually explicit remarks and overt sexual displays made by the defendant . . . or remarks or behavior demonstrating the defendant's enjoyment of the sheer violence of rape." State v. Arnett, 49 S.W.3d 250, 262 (Tenn. 2001). However, evidence of ejaculation alone is insufficient to support an application of enhancement factor (7). Kissinger, 922 S.W.2d at 490. Here, in his statement to police, the defendant admitted to masturbating in front of the victim. The victim testified that the defendant told her he planned to engage in intercourse with her every Tuesday and told her not to tell anyone about the incident. The record indicates the defendant used the victim as a means of gratifying his desire for pleasure or excitement. We conclude that the trial court did not err in its application of enhancement factor (7).

## Conclusion

For the aforementioned reasons, we sustain the defendant's conviction for rape and affirm the judgment of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE

---

[2] Since the date of the defendant's sentencing, the order of enhancement factor numbers have changed. Therefore, we will refer to the enhancement numbers as they existed at the time of sentencing.